19-MJ-2075-MBB; 19-MJ-2076-MBB; 19-MJ-2077-MBB

## AFFIDAVIT OF JAMES CRYAN IN SUPPORT OF A CRIMINAL COMPLAINT

I, James Cryan, Special Agent with the United States Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent with the Drug Enforcement Administration since 2004. Upon completion of the Basic Agent Training in 2004, I was assigned to the Worcester Office of the New England Field Division pending a permanent change of station. In May 2005, I reported to the New York Field Division Office in Manhattan, NY and was assigned to an enforcement group. In March 2011, I transferred to the New York Field Division Albany District Office in Albany, NY and was assigned to a Task Force Group. In April 2017, I transferred to the New England Field Division Boston Division Office in Boston, MA and was assigned to an Enforcement Group.

2. As a Special Agent with the DEA, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds. Additionally, I am familiar with the "street" language used by drug traffickers, as well as the

methods they use to disguise conversations and operations.

3. I submit this affidavit in support of a criminal complaint charging Richard Petit-Frere (DOB xx/xx/1995), with five counts of knowingly and intentionally distributing a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and one count of conspiracy to knowingly and intentionally distribute a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

4. Additionally, this affidavit is submitted in support of a criminal complaint charging James Hilaire (DOB xx/xx/1995), with one count of conspiracy to knowingly and intentionally distribute a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

5. Finally, this affidavit is submitted in support of a criminal complaint charging Anthony Pena-Diaz (DOB xx/xx/1995), with one count of knowingly and intentionally distributing a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and one count of conspiracy to knowingly and intentionally distribute a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

6.      The facts herein are based on my involvement in this investigation, a review of reports written by other law enforcement officers during this investigation, and my conversations with them. In submitting this affidavit, I have not included every fact known to me regarding this investigation. Instead, I have included only those facts which I believe are sufficient to establish probable cause.

## INVESTIGATION

7.      Since approximately February 2018, other agents and I have been investigating the drug trafficking activities of Richard Petit-Frere ("Petit-Frere"), Anthony Pena-Diaz ("Pena-Diaz"), and James Hilaire ("Hilaire") as well as many other known associates of a violent street gang in Randolph, MA, known as No Fear Ones ("NF1"). The DEA, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the Randolph and Stoughton Police Departments have conducted numerous buy/walk operations with numerous members of NF1, including Petit-Frere, Pena-Diaz, and Hilaire. Over the last several years, there have been numerous shooting incidents within the town of Randolph. These shootings stem from a long-standing feud between two gangs, NF1 and Take No Shorts ("TNS"). Investigations have revealed that TNS is aligned with Bomb Boys and Charlame Park 2, based out of Boston. Since June 16, 2014, there have been twenty-eight (28) confirmed shootings within Randolph as well as numerous unconfirmed calls for shots fired. Within these reported shots fired incidents, five victims were struck by bullets and seriously injured. During this period, twenty-three (23) firearms have been recovered from NF1 and TNS gang members by various police agencies. The shootings between the gangs have had a consistent pattern; parties from one side of the feud are shot at, followed shortly later by a retaliatory shooting.

8.      Based on intelligence derived from prior investigations, Petit-Frere, Pena-Diaz,

and Hilaire have been friends/associates since their teenage years and have continued to be very close to date. They have been observed together numerous times during surveillance operations and have been together for multiple controlled purchases. Additionally, Hilaire has been observed with both Petit-Frere and Pena-Diaz numerous time during surveillance operations.

9. This investigation involved the use of a DEA Special Agent working in an undercover capacity ("UC-2"). UC-2 has been employed as a Special Agent with the Drug Enforcement Administration since January of 2017. Since August of 2017, UC-2 has participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. Through UC-2's training and experience, UC-2 is familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. UC-2 is also familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds. Additionally, UC-2 is familiar with the "street" language used by drug traffickers, as well as the methods they use to disguise conversations and operations.

**May 2, 2018 Drug Transaction Involving Richard Petit-Frere and James Hilaire**

10. On May 2, 2018 at approximately 10:00 a.m., UC-2 reached out to Petit-Frere via text message to set up a purchase of fentanyl. At approximately 1:00 p.m., Petit-Frere sent UC-2 a text message directing UC-2 to drive to Irving Road in Randolph, MA, and park in the parking lot. Approximately ten minutes later, Petit-Frere arrived in a black 2014 Infiniti Q50 bearing

MA license plate FF966CB registered to Hilaire. UC-2 observed that Hilaire was driving the Infiniti and Petit-Frere was sitting in the front passenger seat. UC-2 is familiar with both individuals through previous investigation into NF1. As the Inifinti approached UC-2's vehicle, Hilaire had to reposition the Infiniti multiple times in order to get the Inifinti close to UC-2's vehicle. Once the Infiniti was next to UC-2's vehicle, Petit-Frere leaned out of the front passenger side window and tossed UC-2 a knotted clear plastic bag containing a white powdery substance that UC-2 recognized, based on UC-2's training and experience, to be fentanyl. UC-2 then leaned out of the undercover's vehicle's window and handed Petit-Frere money in exchange for the narcotics. During the transaction, Hilaire made direct eye contact with UC-2 as Petit-Frere tossed UC-2 the bag containing the white powdery substance and UC-2 handed Petit-Frere the money. UC-2 observed that Hilaire appeared calm and relaxed during the entire transaction.

11. Subsequent to this transaction, UC-2 reviewed the Massachusetts driver's license photographs of both Petit-Frere and Hilaire and confirmed them to be the individuals inside vehicle on May 2, 2018.

12. The substance UC-2 purchased on May 2, 2018, was submitted for DEA laboratory analysis and confirmed to contain fentanyl.

**May 17, 2018 Drug Transaction Involving Richard Petit-Frere and Anthony Pena-Diaz**

13. On May 17, 2018, at approximately 12:15 p.m., UC-2 communicated with Petit-Frere via text message and voice call to set up a purchase of fentanyl. Petit-Frere instructed UC-2 to meet at Bridle Path off Farm St in Canton, MA. At approximately 12:52 p.m., UC-2 observed a black Infiniti pull down Bridle Path and park next to the undercover's vehicle. This vehicle was later confirmed to be a 2012 Infiniti M37 registered to Anthony Pena-Diaz. UC-2 was able to identify Anthony Pena-Diaz as the driver of the vehicle, and Petit-Frere as the

individual in the front passenger seat. UC-2 was familiar with both Pena-Diaz and his vehicle from multiple prior surveillance operations. Once the Infiniti was next to UC-2's vehicle, Petit-Frere leaned out of the front passenger side window and tossed UC-2 a knotted clear plastic bag containing a white powdery substance that UC-2 recognized, based on UC-2's training and experience to be fentanyl. UC-2 then leaned out of the undercover's vehicle's window and handed Petit-Frere money in exchange for the narcotics. Subsequent to this transaction, UC-2 reviewed Pena-Diaz's Massachusetts driver's license photograph and confirmed him to be the individual driving the vehicle on May 17, 2018.

14. The substance UC-2 purchased on May 17, 2018, was submitted for DEA laboratory analysis and confirmed to contain fentanyl.

**June 7, 2018 Drug Transaction Involving Richard Petit-Frere and Anthony Pena-Diaz**

15. On June 7, 2018, at approximately 12:40 p.m., UC-2 communicated with Petit-Frere via text message and voice call to set up a purchase of fentanyl. At approximately 1:15 p.m., Petit-Frere instructed UC-2 to meet on Sky View Road in Randolph, MA. At approximately 1:30 p.m., UC-2 observed a red Chevy Malibu on the right side of the street and pulled up to the passenger side. UC-2 was able to identify Anthony Pena-Diaz as the driver of the vehicle, and Petit-Frere as the individual in the front passenger seat. Petit-Frere tossed UC-2 a knotted clear plastic bag containing a white powdery substance that UC-2 recognized, based on UC-2's training and experience, to be fentanyl. UC-2 then leaned out of the undercover's vehicle's window and handed Petit-Frere money in exchange for the narcotics.

16. The substance UC-2 purchased on June 7, 2018, was submitted for DEA laboratory analysis and confirmed to contain fentanyl.

### July 10, 2018 Drug Transaction Involving Richard Petit-Frere and Anthony Pena-Diaz

17.     On July 10, 2018, at approximately 12:00 p.m., UC-2 communicated with Petit-Frere via text message and voice call to set up a purchase of fentanyl. Petit-Frere informed UC-2 that he would be back in the Randolph area within an hour or two, and at approximately 2:00 p.m., Petit-Frere contacted UC-2 and instructed UC-2 to drive to Waldo Street in Randolph, MA, and make a left turn on the dirt path. At approximately 2:40 p.m., UC-2 called to Petit-Frere who stated he would be arriving shortly. Moments later, UC-2 observed the black Infiniti approaching the undercover's vehicle. This was the same black Infiniti registered to Anthony Pena-Diaz that UC-2 observed during the May 17, 2018 transaction involving Petit-Frere and Pena-Diaz. As the Infiniti approached, UC-2 observed that Pena-Diaz was driving the vehicle and Petit-Frere was sitting in the front passenger seat. As the Infiniti pulled next to UC-2's vehicle, Pena-Diaz tossed UC-2 a knotted clear plastic bag containing a white powdery substance that UC-2 recognized, based on UC-2's training and experience, to be fentanyl, and UC-2 handed Pena-Diaz money in exchange for the narcotics.

18.     The substance UC-2 purchased on June 10, 2018, was submitted for DEA laboratory analysis and confirmed to contain fentanyl.

### August 1, 2018 Drug Transaction Involving Richard Petit-Frere

19.     On August 1, 2018 at approximately 9:50 a.m., UC-2 communicated with Petit-Frere via text message and voice call to set up a purchase of fentanyl and was directed to Arboretum Way in Canton, MA. At approximately 10:25 a.m., Petit-Frere arrived in a Honda Accord (registered to Christian Petit-Frere who law enforcement determined was the brother of Richard Petit-Frere) alone and pulled next to UC-2's vehicle in the middle of Arboretum Way. Petit-Frere then handed UC-2 a knotted clear plastic bag containing a white powdery substance

that UC-2 recognized, based on UC-2's training and experience, to be fentanyl, and UC-2 handed Petit-Frere money in exchange for the narcotics.

20. The substance UC-2 purchased on August 1, 2018, was submitted for DEA laboratory analysis and confirmed to contain fentanyl.

### November 11, 2018 Drug Transaction Involving Richard Petit-Frere

21. On November 11, 2018 at approximately 11:36 a.m., UC-2 communicated with Petit-Frere via voice call to set up a purchase of fentanyl and was directed to the area of E. Belcher in Foxboro, MA. At approximately 12:05 p.m., Petit-Frere called UC-2 and stated he was on the street and turning onto Spring Brook Road, where UC-2 was located. Moments later Petit-Frere pulled up to UC-2's vehicle's driver's side window and tossed UC-2 a knotted clear plastic bag containing a white powdery substance that UC-2 recognized, based on UC-2's training and experience, to be fentanyl, and UC-2 handed Petit-Frere money in exchange for the narcotics.

22. The substance UC-2 purchased on November 11, 2018, was submitted for DEA laboratory analysis and confirmed to contain fentanyl.

### CONCLUSIONS

23. Based on the foregoing facts, there is probable cause to believe that on May 2, 2018, May 17, 2018, June 7, 2018, July 10, 2018, August 1, 2018, and November 11, 2018, Richard Petit-Frere committed violations of federal law, including knowingly and intentionally distributing a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to knowingly and intentionally distribute a mixture and substance containing a detectable amount of

N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

24. Additionally, on the foregoing facts, there is probable cause to believe that on May 2, 2018, James Hilaire committed conspiracy to knowingly and intentionally distribute a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

25. Finally, based on the foregoing facts, there is probable cause to believe that on May 17, 2018, June 7, 2018, and July 10, 2018, Anthony Pena-Diaz committed violations of federal law, including knowingly and intentionally distributing a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to knowingly and intentionally distribute a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

_____
James Cryan
Special Agent, DEA

Sworn and subscribed to me this 29th day of January, 2019.

_____
Honorable Marianne B. Bowler
United State Magistrate Judge